UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESLIE A. McKERN,

                Plaintiff,

                                                              **Hon. Hugh B. Scott**

                v.

                                                              **17CV944**

                                                              **CONSENT**

COMMISSIONER,

                                                              **Order**

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 15 (plaintiff), 18 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

References noted as "[R. __]" are to the certified record of the administrative proceedings, filed with this Court (Docket No. 7).

The plaintiff ("Leslie McKern" or "plaintiff") filed an application for disability insurance benefits on August 6, 2014, for his disability application and July 31, 2014, for his Supplemental Security Income application [R. 14]. These applications were denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated March 15, 2017, that the plaintiff was not disabled within

the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on July 18, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on September 21, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 15, 18), and plaintiff duly replied (Docket No. 19). This case was scheduled for oral argument and a status conference on January 10, 2019 (Docket Nos. 22, 23; cf. Docket Nos. 20, 21), but due to the failure to enact appropriations, the proceedings were stayed (Docket No. 24). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 44-year-old with high school education, last worked as a dump truck driver [R. 25-26]. He contends that he was disabled as of amended onset date of January 1, 2014 [R. 14]. Plaintiff claims the following impairments deemed severe by the ALJ: depression, anxiety, and post-traumatic stress disorder [R. 17]. Plaintiff testified that he had anxiety attacks of such severity that he had to relinquish his professional driver's license [R. 57].

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ found that plaintiff had a residual functional capacity without any physical limitations [R. 19]. As for mental residual functional capacity, the ALJ also found that plaintiff was able to perform unskilled work, determining that he can work with regular breaks approximately every 2 hours; work where interactions with others are limited to approximately one third of the work day, and not with the public. The ALJ also noted that plaintiff was not to perform on fast-paced assembly work. [R. 19.] The ALJ then concluded that plaintiff's

symptoms showed severe mental impairments, but his medical record indicates symptoms were stable and did not prevent him from working [R. 19].

The ALJ found that plaintiff was unable to perform past relevant work as a dump truck driver [R. 25]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as cleaner (either at light or medium exertion levels[1]) or mail sorter (light work) [R. 25-26]. As a result, the ALJ held that plaintiff was not disabled [R. 26].

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

---

[1]DOT Nos. 323.687-014 and 301.687-014.

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.

1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that he or she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. At Step Four of the five-step analysis, plaintiff contends that the ALJ found plaintiff's mental RFC that was not supported by substantial evidence (Docket No. 15, Pl. Memo. at 11-14). The ALJ relied solely upon the non-examining opinion of Dr. Straussner [R. 106-15, 116-25, 23] for an opinion that predates plaintiff's January 1, 2014, amended onset date. Plaintiff argues that other opinion evidence contradicts Dr. Straussner's opinion, while any medical evidence that predates the onset date is not relevant

5

(Docket No. 15, Pl. Memo. at 11-12), especially when that opinion comes from a non-examining source (id.). Thus, the ALJ should not have considered Dr. Straussner's opinion.

Dr. Straussner based these opinions on an earlier onset date of January 1, 2009 [R. 107, 117]. The doctor found, on August 28, 2013, that plaintiff had moderate limitations, which the ALJ found did not corroborate the notion that plaintiff's problems would prevent him from performing unskilled work [R. 23, 110, 113].

Defendant Commissioner responds that the ALJ thoroughly and properly evaluated plaintiff's medical opinions. Despite Dr. Straussner's opinion predating the now amended onset date, defendant points out that the ALJ relied upon medical opinions after the onset date that support the ALJ's findings (Docket No. 18, Def. Memo. at 22). Plaintiff failed to appear before state agency psychologist, Dr. Butensky [R. 95]; defendant concludes that plaintiff failed to meet his burden of proof by not attending the state agency consultative examination (Docket No. 18, Def. Memo. at 22-23).

Plaintiff next faults the ALJ for rejecting the opinion of treating psychiatric nurse, Terry Jo Brooks-Devlin, because she was not an acceptable medical source under Social Security regulations and that her reports indicated plaintiff's improvement when he consistently took his medication (Docket No. 15, Pl. Memo. at 14-15; [R. 23-24]).

Ordinarily, medical evidence that predates the claimed onset date is not relevant to evaluation of claimant's disability. Carway v. Colvin, No. 13 Civ. 2431(SAS), 2014 WL 1998238, at *5 & n.91 (S.D.N.Y. May 14, 2014); Briscoe v. Astrue, 892 F. Supp.2d 567, 582 (S.D.N.Y. 2012) (Gorenstein, Mag. J.). On this basis, Dr. Straussner's opinion should have been disregarded. As defendant notes, however, that opinion was consistent with the

6

subsequent, post-onset date medical record that the ALJ could have relied upon. Furthermore, plaintiff repeatedly did not make himself available for consultative psychological examinations after the onset date. To the contrary is the opinion of plaintiff's treating psychiatric nurse. Despite the change in the regulations that post-date this case (<u>cf.</u> Docket No. 15, Pl. Memo. at 14 n.3), the ALJ was not free to reject that nurse's opinion without relying upon other relevant evidence. Nurse Brooks-Devlin's record indicates plaintiff's poor condition when he failed to take prescribed medication and improvement when he did. Added to other medical evidence showing only moderate restrictions **supports the ALJ's findings**.

Plaintiff alternatively argues that the ALJ did not explain why the ALJ did not include limitations noted by Dr. Straussner in the opinion, despite giving that opinion significant weight. Plaintiff contends that the ALJ found that he could interact with coworkers for up to one-third of the workday [R. 19], based upon plaintiff's reported activities, including the fact that he lives with his girlfriend and suggested that he interacted with friends during the day [R. 22, 23]. (Docket No. 15, Pl. Memo. at 16-17.) Doctor Straussner, however, found that plaintiff was limited to brief, superficial contact with coworkers and the public [R. 113]. In assessing this opinion, the ALJ found that plaintiff could perform brief or superficial contact with co-workers or the public [R. 23]. Defendant responds that the ALJ's conclusions in the Residual Functional Capacity assessment need not perfectly correspond with a medical assessment (Docket No. 18, Def. Memo. at 23).

This Court compared Dr. Straussner's mental residual functional capacity explanation with the ALJ's resulting residual functional capacity [R. 19, 113] and find that the two are consistent. Dr. Straussner found observed moderate to marked limitation in relating adequately

7

to others was inconsistent with the medical record, concluding that plaintiff could perform with brief or superficial contact with co-workers and the public [R. 113], while the residual functional capacity found by the ALJ would limit plaintiff's job to not interact with the public and limited to partial interaction with co-workers. Plaintiff has not shown that he could not interact with co-workers as well.

Plaintiff also contends that the ALJ did not understand post-traumatic stress disorder ["PTSD"] and relied upon GAF scores to find that plaintiff only had moderate limitations, even though the current edition of the <u>Diagnostic and Statistical Manual of Mental Disorders</u> [5th Edition, "DSM-5"] no longer uses that test. On the PTSD, plaintiff replies that the ALJ assumed that plaintiff's symptoms from his childhood trauma remained stable over time (Docket No. 19, Pl. Reply at 1), with the ALJ noting that plaintiff had worked for years notwithstanding this trauma and had left his last job for reasons unrelated to the trauma [R. 22 n.1].

Defendant counters that the ALJ only noted GAF scores given by treatment providers but the ALJ did not give those scores significant weight and only reported them while consistent with other evidence in the record (Docket No. 18, at 28). Under Social Security regulations, GAF scores have no direct correlation to severity requirements for mental disorder listings and generally are not used and the agency recognized that <u>DSM-5</u> did not use GAF scores (Docket No. 18, Def. Memo. at 28, citing 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000)).

As for PTSD, the ALJ noted subsequent diagnosis of this disease after the onset date [R. 21]. Plaintiff's PTSD may not have led to plaintiff losing his last job (<u>id.</u>; see <u>Milam v. Colvin</u>, 794 F.3d 978, 985 (8th Cir. 2015) (loss of work for a non-disability reason may weigh

against plaintiff's credibility)). This record also shows plaintiff was prescribed medication for PTSD [R. 384-96, 406-07], but declined to take medication to ease his sleep [R. 386, 389].

Finally, as for use of the GAF scores, the American Psychiatric Association published the DSM-5 in 2013 which was applicable to plaintiff's January 2014 onset date. There, the GAF test was deemphasized. As both parties note (Docket Nos. 18, Def. Memo. at 28; 15, Pl. Memo. at 17), the agency now declares that GAF scores have "no 'direct correlation to the severity requirements in our mental disorder listings'" (Docket No. 18, Def. Memo. at 28, quoting 65 Fed. Reg. 50,746, 50,764-64 (Aug. 21, 2000)). The ALJ noted plaintiff's GAF scores from April to September 2014 from treatment providers [R. 20, 378, 379, 381, 383] but did not rely upon those scores to reach the residual functional capacity assessment. The ALJ cited to these scores from the treatment records in 2014, noting that the scores indicated mild or moderate functional impairment [R. 20]. The ALJ also noted from one session that plaintiff was not compliant with taking medication or in other recommendations [R. 20; see R. 381-82 (plaintiff stating he would not get blood work for Depakote and he split tablets of Paxil rather than take entire pill in the morning), 383 (plaintiff reported stopping Depakote to avoid blood testing)]. Each of these records from Brooks-Devlin and Dr. Esat Cirpili [R. 378, 379] discuss plaintiff's mental state and then diagnosed on Axis I to V, with the last axis being the GAF score [R. 378, 379, 381, 383]. Later diagnoses in 2015 did not include GAF scores. The ALJ cited to the treatment notes in their entirety and not merely to the GAF scores noted in 2014 in finding that plaintiff had only a moderate limitation [R. 22].

Thus, plaintiff's PTSD and GAF arguments lack merit.

9

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 15) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 18) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed**, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
January 23, 2019